AO 106 (Rev. 04/010) Application for Search Warrant        AUTHORIZED AND APPROVED/DATE: Brandon Hale 4/14/2021

# UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF _____

In the Matter of the Search of  )
*(Briefly describe the property to be search* )
*Or identify the person by name and address)* )
PROPERTY KNOWN AS:  )
    6 unidentified DVD-R's,  )
    Slick Digital Media Device 4GB #MP418C-4,  )
    LG Smartphone cellphone,  )
    unidentified VHS cassette,  )
    iPod "Nano",  )
    Amazon media device-tablet,  )
    Sandisk Thumb Drive-Cruzer Glide 64GB flash drive;  )
IN THE POSSESSION OF:  )
    FBI Oklahoma City Field Office  )
    3301 West Memorial Road  )
    Oklahoma City, OK 73134-7098  )

FILED
APR 15 2021
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY _____ DEPUTY

Case No: M-21-235-P

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:
    ☒ evidence of the crime;
    ☒ contraband, fruits of crime, or other items illegally possessed;
    ☒ property designed for use, intended for use, or used in committing a crime;
    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2241(c) | Aggravated sexual abuse of a minor |
| 18 U.S.C. § 2251(a) | Sexual exploitation of children |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of child pornography |

The application is based on these facts:

See attached Affidavit of Special Agent Andrew Lauro, Federal Bureau of Investigation, which is incorporated by reference herein.

    ☒ Continued on the attached sheet(s).
    ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

ANDREW LAURO
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: 4/15/21

City and State: Oklahoma City, Oklahoma

*Judge's signature*

GARY M. PURCELL, U.S. Magistrate Judge
*Printed name and title*

2

## ATTACHMENT A

1. The following electronic devices and storage mediums, which were seized by the Love County Sheriff's Office from MCMILLAN's residence at 9018 Oil Springs Rd., Marietta, OK, and are currently held as evidence at the FBI Oklahoma City Field Office, 3301 West Memorial Road, Oklahoma City, OK 73134-7098:
    a. 6 unidentified DVD-R's
    b. Slick Digital Media Device 4GB #MP418C-4
    c. LG Smartphone cellphone
    d. unidentified VHS cassette
    e. iPod "Nano"
    f. Amazon media device-tablet
    g. Sandisk Thumb Drive-Cruzer Glide 64GB flash drive.

2. This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B

# ATTACHMENT B

1. All electronically stored information on the Devices described in Attachment A that depict sexually explicit conduct or that show a violation of Title 18, U.S.C. §§ 2241(c), 2251(a), and 2252A(a)(5)(B) (possession of child pornography), including any electronic records or data that show the creation, transmission, distribution, or receipt of sexually explicit conduct, including, but not limited to:

    a.  records relating to communication with others as to the criminal offenses above; including telephone numbers and/or IP addresses assigned to the individual devices, incoming and outgoing voice messages; text messages; multimedia messages; emails; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

    b.  records relating to documentation or memorialization of the criminal offenses above, including voice memos, photographs, notes, memos, videos, emails, and other audio and video media, and all information and metadata attached thereto including device information, geotagging information, and information of the relevant dates related to the media;

    c.  records relating to the planning and execution of the criminal offense above, including Internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

    d.  application data, including but not limited to Facebook, Instagram, Snapchat, Twitter, Kik, WhatsApp, Messenger, Youtube, relating to the criminal offenses above;

    e.  any and all child pornography.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved use names and passwords, documents, and browsing history; and

3. All records and information related the geolocation of the Device at a specific point in time.

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Andrew Lauro, being duly sworn, depose and state that:

## INTRODUCTION

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and have been so employed since August 2020. I am currently assigned to the Joint Terrorist Task Force (JTTF) of Oklahoma City Division of the FBI and have been assigned to that squad for approximately two (2) months. Prior to being employed as a Special Agent with the FBI, I was a Police Officer and Special Weapons and Tactics (SWAT) Team Operator for approximately eleven (11) years. As a Special Agent with the FBI, I am a law enforcement officer of the United States as defined by 18 U.S.C. § 2510(7), meaning that I am empowered by law to conduct investigations of and to make arrests for violations of Federal law, including violations of the Major Crimes Act (MCA) and to execute warrants issued under the authority of the United States. During my time as a Special Agent, I have participated in criminal investigations in a backup capacity. I have also received training in criminal investigations.

2. I have participated in and have knowledge of the execution of search warrants involving cellular telephones and other electronic devices. I have participated in and have knowledge of the execution of many search warrants on computers, cellular telephones, businesses, residences, internet service providers, and email accounts. I am seeking a warrant to search the items listed in Attachment A to this affidavit for the items listed in Attachment B of this affidavit, which are evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2241(c), 2251(a), and 2252A(a)(5)(B).

3. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage

media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers,

each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

h. Applications: Applications are a number of programs within a cellular phone that provide additional or alternative capabilities to those initially placed on the phone by the manufacturer. Indeed, many applications can be used on a cellular phone even if the phone does not have cellular service so long as the phone as a Wifi connection to the Internet. These applications can have a number of functions or purposes, including but not limited to messaging or calling, photo or video taking and sharing, Internet browsing, shopping and purchasing, and other forms of social media. Examples of said applications can be (but are not limited to) Facebook, Instagram, Snapchat, Twitter, Kik, WhatsApp, Messenger, Youtube, Venmo, and PayPal.

4. Based on my training, experience, and reading of professional literature, I know that cellular phones and tablets have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA as well as the ability to host a number of other applications. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, as well as evidence of criminal activity conducted using the device.

5. Based on my knowledge, training, and experience, I know that electronic devices, including but not limited to cellphones, tablets, and other storage mediums, such as portable hard drives, USB flash drives, DVD's, VHS's can store information for long periods of time. Similarly, things that have been viewed via the Internet, i.e., the browsing history, are typically retained for some period of time on the device itself. Photo, videos, messages, articles, and other forms of data can often be saved intentionally by the user of the device or automatically by the device. This electronically stored information can often be recovered with forensic tools, even if it is deleted by the user.

6. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions

about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

7. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the electronic device(s) named in Attachment A. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire device, that might expose many parts of the device to human inspection in order to determine whether it is evidence described in Attachment B.

8. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night. Additionally, because the

devices may be password-protected or otherwise require specialized expertise to forensically examine, the devices may need to be transferred outside the Western District of Oklahoma to in order to be examined.

9. This affidavit contains only the information that I believe is necessary to support probable cause for this Application. I have not included every fact or matter observed by me or known by law enforcement. This information is based on my personal knowledge and observations made during the course of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during the investigation.

## PROBABLE CAUSE

10. VENUE: the facts and circumstances alleged in this affidavit occurred within the Eastern District of Oklahoma. More specifically, based on the Supreme Court decision in *McGirt v. Oklahoma* (2020), the below described locations and events all occurred within the geographic boundaries of the Chickasaw Nation and is "Indian Country" within the definition of 18 U.S.C. § 1151.

11. SUSPECT: the Defendant is JAY LEON MCMILLAN, hereafter referred to as MCMILLAN. MCMILLAN is an enrolled member of the Walker River Paiute Tribe. His date of birth is XX/XX/1997.

12. VICTIM: the juvenile victim is K.H. Her date of birth is XX/XX/2005.

13. On February 5, 2019, James Hamilton made a walk-in report to the Love County (Oklahoma) Sheriff's Office that his then-12-year-old daughter, K.H., reported to him that she had been

sexually abused by her step-brother Jay MCMILLAN. Deputies arranged for a forensic interview of K.H.

14. On February 8, 2019, Lara Welch, a forensic interviewer who worked for Sara's House in Ardmore, Oklahoma conducted a forensic interview of K.H. The interview was video recorded. During a series of baseline questions conducted by Welch, K.H. displayed several clues of victimization. K.H. frequently looked down at the floor and made very little eye contact when speaking. K.H.'s shoulders were slumped and remained slumped for the duration of the interview. When K.H. would speak about the sexual assaults, K.H. would cross her arms in front of her at waist level. K.H. appeared introverted and outwardly ashamed.

15. During the forensic interview conducted by Welch, K.H. stated the following:

    a. "My dad's ex-wife ... one of her sons. He did stuff to me sexually ... Jay (MCMILLAN) ... the first time he did it I was either five (5) or six (6) ... he took me into the other room and took me in the closet and did stuff, like he showed me his private parts. ... he made me put his part in my mouth ... he would put his thing in my butt."

    b. "He (MCMILLAN) would do it until this white stuff came out ... sometimes he would make me eat the white stuff and I didn't like it and it hurt whenever he tried to put it in me."

    c. "And I told him that I didn't like it and it hurt and he still did it anyway."

16. Later, during the interview K.H. disclosed the following:

    a. "He (MCMILLAN) told me to take off my clothes ... he would take off his clothes and he would do stuff to me ... He would tell me to lay on the bed and ... he would like make me put my mouth on his thing and he would put his thing inside me ... he would take, grab my head and like, move it back and forth ... sometimes he'd tell me to open

      my mouth wider and deeper...White stuff came out ... I didn't like it. It tasted nasty ... He would either make me swallow it or spit it out..."

    b. "He would do it until the white stuff came out...in my butt ... besides my mouth, he would try to put it in this area (indicating to her groin) but I told him not to and ... because it hurt."

    c. "He (MCMILLAN) touched me in, down here ... He was like rubbing ... he would go on the outside and on the inside ... he licked, he like licked down here ... he would like wrap his arm around my legs and pull me closer to his face ..."

17. K.H. stated that when her father and his girlfriend would go out at night, MCMILLAN was supposed to be watching the children, to include K.H. because he was older. MCMILLAN would take K.H. into his room and make K.H. watch pornographic videos on his mobile device. During these instances, K.H. stated that MCMILLAN "would make me grab his thing and go like that ... until the white stuff came out." She also stated that on occasion, he would show her pornographic DVD's.

18. K.H. also recalled a time when MCMILLAN "took a video of me putting my mouth on his thing ... and then he would watch it later and show me." She could not recall with specificity when that occurred.

19. K.H. stated during the interview that the last time MCMILLAN "put it in her" was when she was either eleven (11) or twelve (12) years old. She stated that she believed MCMILLAN stopped because she started to get her period.

20. K.H. advised Welch that the last time MCMILLAN sexually abused her was during Christmas break in January 2018. During this instance, MCMILLAN took K.H. out to a mobile camper on the property and made K.H. disrobe. She stated that MCMILLAN took pictures of her

without her bra and of her "private parts." K.H. stated that MCMILLAN told her that her face would not be in any of the pictures. She further stated that he used his cellphone to text message individuals on an unknown mobile application. K.H. stated that MCMILLAN would give her the phone and tell her what messages to write out and send or alternatively, would send messages himself pretending to be her. She stated that the unknown male individuals would send pictures back of their own private parts through the mobile application.

21. K.H. reported all of the abuse occurred at the home she shared with MCMILLAN located at 9018 Oil Springs Rd., Marietta, OK. She stated the reason she came forward in 2019 was because her father had discovered her searching and watching videos online about rape victims discussing their experiences.

22. On February 13, 2019, deputies with the Love County Sheriff's Office obtained arrest warrants for MCMILLAN for the offenses of forcible sodomy, lewd or indecent acts to a child, and rape as well as a search warrant for a variety of electronic devices, including cellphones, digital cameras, computers, hard drives, and disks.

23. During the course of the execution of the search warrant, the following electronic and media storage devices and mediums were seized: pornographic DVD's, including "Girls Going XXXtra Crazy #8," "Porn Bloopers," "Love My Butt #3" (corroborating K.H.'s account); 6 unidentified DVD-R's; 2 DVD movies; a digital media device; a cellphone; an unidentified VHS cassette; an iPod "Nano"; a tablet; and a flash drive. Since the execution of the warrant in 2019, said items were in the custody of the Love County Sheriff's Office until I retrieved them and brought them to the FBI Oklahoma City Field Office on April 13, 2021.

24. Based on my training and experience, it is common for sexual offenders to record their abuse in either photo or video format using cellular devices or other digital cameras. It is not

uncommon for offenders to distribute or transmit said photos or videos to other individuals, again, using cellular devices or computers, or using hard-copy DVD's or VHS's.

25. Based on the first-hand account of K.H., as well as my training and experience, I believe there is probable cause that Jay MCMILLAN has violated Title 18, U.S.C. §§ 2241(c) aggravated sexual abuse of a minor; 2251(a) sexual exploitation of children; and 2252A(a)(5)(B) (possession of child pornography), and that evidence of said offenses is located on the electronic devices recovered by the Love County Sheriff's Office.

26. Wherefore, I am requesting permission to examine and search the devices and mediums listed in Attachment A for the evidence and items listed in Attachment B.

_____
Andrew Lauro, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 15th day of April, 2021.

_____
GARY M. PURCELL
United States Magistrate Judge

## ATTACHMENT A

1. The following electronic devices and storage mediums, which were seized by the Love County Sheriff's Office from MCMILLAN's residence at 9018 Oil Springs Rd., Marietta, OK, and are currently held as evidence at the FBI Oklahoma City Field Office, 3301 West Memorial Road, Oklahoma City, OK 73134-7098:
    a. 6 unidentified DVD-R's
    b. Slick Digital Media Device 4GB #MP418C-4
    c. LG Smartphone cellphone
    d. unidentified VHS cassette
    e. iPod "Nano"
    f. Amazon media device-tablet
    g. Sandisk Thumb Drive-Cruzer Glide 64GB flash drive.

2. This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B

## ATTACHMENT B

1. All electronically stored information on the Devices described in Attachment A that depict sexually explicit conduct or that show a violation of Title 18, U.S.C. §§ 2241(c), 2251(a), and 2252A(a)(5)(B) (possession of child pornography), including any electronic records or data that show the creation, transmission, distribution, or receipt of sexually explicit conduct, including, but not limited to:

    a. records relating to communication with others as to the criminal offenses above; including telephone numbers and/or IP addresses assigned to the individual devices, incoming and outgoing voice messages; text messages; multimedia messages; emails; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

    b. records relating to documentation or memorialization of the criminal offenses above, including voice memos, photographs, notes, memos, videos, emails, and other audio and video media, and all information and metadata attached thereto including device information, geotagging information, and information of the relevant dates related to the media;

    c. records relating to the planning and execution of the criminal offense above, including Internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

    d. application data, including but not limited to Facebook, Instagram, Snapchat, Twitter, Kik, WhatsApp, Messenger, Youtube, relating to the criminal offenses above;

    e. any and all child pornography.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved use names and passwords, documents, and browsing history; and

3. All records and information related the geolocation of the Device at a specific point in time.